## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR ISSUANCE OF A CRIMINAL COMPLAINT

Your affiant, David S. Rochard, being duly sworn and deposed, states as follows:

### INTRODUCTION AND BACKGROUND

1.  Your affiant has been a police officer for twenty two (22) years and is currently employed by the James City County Police Department assigned to the Tri-Rivers Drug Task Force (TRDTF) for the past sixteen (16) years. TRDTF is a multi-jurisdictional narcotics enforcement unit under the auspices of the State Police. Your affiant has made numerous arrests for street level drug possession and distribution, as well as having conducted and/or assisted with state and federal drug investigations which led to the arrest and convictions of mid- to upper-level drug dealers. Your affiant has attended and completed training courses on the topics of drug recognition/identification, the sale and purchase of illegal drugs, the effects of drugs, methods of introducing drugs into the body and drug paraphernalia. Your affiant has also attended and completed training at TOP GUN, a forty hour course on the investigation and prosecution of drug cases. Your affiant is a current faculty member of TOP GUN.  Your affiant has been recognized in the City of Williamsburg/James City County General District, and Circuit Courts as a drug expert. For the past six (6) years your affiant has been assigned as a Task Force Officer with Homeland Security Investigations, Norfolk Division under the Peninsula High Intensity Drug Trafficking Area (HIDTA).

2.  Your affiant has conducted criminal investigations on both the state and federal level, involving the manufacturing, distribution and sale of illegal narcotics. Your affiant is familiar with the methods by which drug trafficking organizations conduct their businesses, including but not limited to, their methods of manufacturing and distributing illegal narcotics, their use of telephones and other electronic applications or "apps" in attempt to conduct and conceal their

communications, the various means and methods by which drug traffickers conceal, convert, transmit, and transport their drug proceeds. Additionally, the information in this affidavit was derived from my personal involvement in the investigation, as well as information gained as the result of interviews with other experienced law enforcement officers. Other information was obtained from the review of documents and reports related to this case. As the case agent, your affiant is fully familiar with the facts of the case.

### FACTS AND CIRCUMSTANCES SUPPORTING PROBABLE CAUSE

3. On September 28, 2023, members of the Tri-River's Drug Task Force, Hampton Roads Peninsula Drug Initiative-Hampton Division, Drug Enforcement Administration and Virginia State Police (hereinafter referred to as the Investigative Team) conducted surveillance at 2009 Commerce Drive, Hampton Virginia: the Ellipse Urban Apartments. The purpose of the surveillance was to locate and arrest Kelsey Lamone MANNING (hereinafter referred to as MANNING) for outstanding indictments for narcotics distribution offenses out of James City County, Virginia.

4. During this investigation the Investigative Team learned that MANNING was operating a white Volkswagen Passat bearing Virginia license plate XXX-7487. The vehicle was parked in a parking spot facing 2009 Commerce Drive, Hampton Virginia. The Investigative Team established a perimeter around the vehicle with a plan to take MANNING into custody when and if he walked out to his vehicle. At approximately 0914 hours, MANNING walked out of the side door to apartment building 2009 with an unknown black male. MANNING was carrying a white plastic bag in his hand. MANNING got into the driver's seat of the Volkswagen and the Investigative Team took him into custody without incident. Search incident to arrest of MANNING'S person revealed $5,303.00 in U.S. Currency, one (1) ounce of marijuana, and 14

grams of suspected crack cocaine from his left shorts pocket. In his right shorts pocket was a baggie containing approximately 7 grams of suspected heroin/fentanyl. MANNING was also in possession of a set of keys with a key fob attached to it. The apartment building was equipped with electronic access points at the doors.

5. The Investigative Team learned from the apartment management that the key fob was registered to Ashley Manning at apartment #5112. The apartment building was equipped with video surveillance which captured MANNING and the unknown black male exiting the apartment building 2009 and showed MANNING carrying a white plastic bag.

6. A Hampton Police Division K-9 officer was contacted and arrived on scene with his trained and certified narcotics canine. They performed an exterior sweep of the Volkswagen which resulted in a positive alert for the presence of narcotics. A search of the vehicle revealed a white plastic Walmart bag on the back seat containing a large rectangular package wrapped in plastic, consistent with the packaging of a suspected kilogram of cocaine, labeled "Buru 16". Inside the same bag were two (2) orange boxes of baking soda, an aluminum pot, and a Pyrex measuring cup with a whisk. In the center console of the vehicle was a Texas identification card for Kelsey Lamone MANNING with his photograph and date of birth.

7. The Investigative Team knocked on the door of apartment #5112 and Ashley Manning answered. She said that she and MANNING were separated but that he frequents the apartment and had been staying there the last few nights to include the night before this incident. During the explanation of events outside involving MANNING and the suspicion that the apartment could contain evidence involving the distribution of narcotics, Ashley invited the Investigative Team inside her apartment. Once inside the apartment members of the Investigative Team observed in plain view a large pile of US Currency stacked up on a nightstand inside the master bedroom which was visible from the main living room where the team was standing. Ashley stated she knew there

was a large amount of money inside the apartment that belonged to MANNING. The Investigative Team decided to obtain a search warrant for the apartment.

8. The search warrant was obtained and executed at 1320 hours by a uniformed Hampton Police Officer. A search of the apartment revealed a large sum of US Currency from the master bedroom nightstand believed to be approximately $120,000.00. In the drawer of the nightstand where the money was located were two (2) rectangular packages of suspected kilograms of cocaine wrapped in plastic and labeled "Buru 2" & "Buru 9". In the kitchen on top of the cabinets was another rectangular package of compressed white powder, suspected kilogram of cocaine with a swastika imprinted on it. There was mail in the apartment with Kelsey MANNING's name on it. The keys found on MANNING'S person with the key fob belonged to Ashley Manning, but she was unaware he had the key fob. Ashley denied any knowledge of the suspected cocaine found within the apartment.

9. Your affiant spoke with MANNING during his arrest and asked him which apartment he was staying at. He indicated that he was staying in apartment #3112 within the same building, 2009 Commerce Dr. from which he exited. The Investigative Team researched that apartment through management and found out that an elderly couple not associated with MANNING was living there. Later during conversations with MANNING, he admitted that he lied about which apartment he was staying in. Your affiant read MANNING his Miranda Rights and he admitted that he does sell illegal narcotics and does not have a steady income. He could not provide a source of any income (names, businesses etc.) but stated he works side jobs to make money.

10. Two of the four kilograms of suspected cocaine were tested and determined to be cocaine hydrochloride, a schedule II narcotic controlled substance.

## CONCLUSION

11. The information contained herein, describes illegal activity to include drug trafficking by Kelsey Lamone MANNING. The suspected cocaine from the vehicle and from the apartment were field tested using a NARK II cocaine test wipe and tested positive for cocaine. The packaging from the cocaine in the vehicle was the same as the packaging from the cocaine inside the apartment with two of the three kilograms having similar markings imprinted on them (i.e "Buru" and a #). Based on your affiants training and experience the quantity of drugs, and money along with materials used to manufacture crack cocaine (i.e. baking soda, pots, glassware etc.), indicate distribution and not personal use. Based upon the information and evidence set forth above, I respectfully submit that there is probable cause to believe that MANNING has committed the offense: possession with intent to distribute controlled substances in violation of Title 21 United States Code, section 841(a)(1).

FURTHER YOUR AFFIANT SAYETH NOT.

David S. Rochard, Task Force Agent
Tri-River's Drug Task Force/TFO
Department of Homeland Security (HSI)

Reviewed and approved,

Eric M. Hurt
Assistant United States Attorney

Sworn and subscribed to before me in Norfolk, Virginia
On this 6th day of October 2023

Robert J. Krask
United States Magistrate Judge
Norfolk, Virginia